UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALINA FLATSCHER, *Individually and on Behalf of All Others Similarly Situated*,

                                  Plaintiff,

                    -v.-

THE MANHATTAN SCHOOL OF MUSIC,

                                  Defendant.

20 Civ. 4496 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:[1]

        Plaintiff Alina Flatscher brings this putative class action against

Defendant The Manhattan School of Music ("MSM") for injuries allegedly

suffered as a result of the school's response to the COVID-19 pandemic during

the Spring 2020 semester, during which semester Defendant ceased in-person

instruction, restricted access to school facilities, and transitioned to online

learning.  Plaintiff alleges that these changes deprived her and other MSM

students of the educational experiences for which they had bargained and paid.

She asserts claims for (i) breach of implied contract, (ii) unjust enrichment,

(iii) conversion, and (iv) deceptive business practices in violation of Section 349

of the New York General Business Law ("NYGBL").  Now before the Court is

Defendant's motion for judgment on the pleadings.  For the reasons set forth

below, Defendant's motion is granted in part and denied in part.

---

[1]     Maggie Lederer, a rising second-year student at Duke Law School and an intern in my
        Chambers, provided substantial assistance in researching and drafting this Opinion.

## BACKGROUND[2]

### A.   Factual Background

### 1.   Plaintiff's Education at MSM

Plaintiff is a vocalist currently residing in Austria.  (Am. Compl. ¶ 18).  In the fall of 2016, Plaintiff enrolled in a Bachelor of Music degree program at MSM.  (*Id.*).  Defendant describes itself as a "premier international conservatory" located in New York City.  (*Id.* at ¶ 20).  Obtaining an education at MSM is not inexpensive:  For the 2019-2020 academic year, Defendant charged each student $48,280 in tuition.  (*Id.* at ¶ 48).  In addition, Defendant imposes various fees on its students, including a general student fee, a student health insurance fee, a doctoral program fee, a thesis research fee, a thesis examination fee, an application/audition fee, a fee for credits exceeding degree credit limits, a course audit fee, a damage/judicial fines fee, a graduation fee, an instrument maintenance fee, and a qualifying examination fee.  (*Id.* at ¶ 52).  Defendant also requires students to select and pay for one of the school's four meal plans.  (*Id.* at ¶ 49).[3]

---

[2]   The facts set forth herein are drawn from Plaintiff's Amended Complaint ("Am. Compl." (Dkt. #21)), which is the operative pleading in this matter.  The Court also considers Defendant's Answer and Defenses to the Amended Complaint ("Answer" (Dkt. #25)) and, as appropriate, the exhibits attached thereto.

For ease of reference, Defendant's opening memorandum is referred to as "Def. Br." (Dkt. #27); Plaintiff's opposition memorandum is referred to as "Pl. Opp." (Dkt. #30); and Defendant's reply memorandum is referred to as "Def. Reply" (Dkt. #32).

[3]   Of these fees, Plaintiff alleges that she was charged a student health insurance fee, qualifying examination fee, graduation fee, and general student fee.  (Am. Compl. ¶ 54). Plaintiff was also assessed a commuter meal plan.  (*Id.* at ¶ 51).  Pursuant to Defendant's 2019-2020 course catalogue, "Annual Fees are required of all students" (*id.* at ¶ 53), but the parties do not direct the Court to any specific contract or agreement that they claim governs any of these particular fees.

Upon enrolling at MSM, each student enters into a Financial Responsibility Agreement ("FRA") with Defendant, wherein the student "accept[s] full responsibility to pay all tuition, fees[,] and other associated costs assessed as a result of [their] registration and/or receipt of services[.]" (Answer Ex. G (FRA)). If a student fails to make a payment, Defendant "will place a business office hold on [the] student account, preventing [the student] from attending private studio lessons, classes, auditions, rehearsals[,] and participating in other [s]chool activities … or using [Defendant's] facilities (including practice rooms)." (*Id.*).

In exchange for students' tuition and fees, Defendant promises a campus "designed to meet all the needs of young performers." (Am. Compl. ¶ 22). In its course catalogue, Defendant assures students that "[t]uition payment provides access to Manhattan School of Music facilities … when classes are in session[.]" (*Id.* at ¶ 20). With particular respect to its campus, Defendant guarantees students that its practice rooms will be open for 24 hours each day. (*Id.* at ¶ 27). Similarly, students enroll for a degree at MSM expecting access to "a state-of-the-art digital multi-track facility capable of recording events in all of [Defendant's] main performance spaces." (*Id.* at ¶ 33; *see also id.* at ¶ 45). In conjunction with this offering, Defendant promises that its staff will "work to ensure that every student leaves MSM with a portfolio of professional audio and video recordings that … serve to further their professional careers." (*Id.* at ¶ 33). In addition, Defendant requires each student to satisfy a concert attendance requirement in order to graduate. (*Id.* at ¶ 61). To Defendant,

3

"[a]ttending concerts is a vital and important part of the total educational experience," and to satisfy the requirement, students must attend seven major concerts or master classes for at least six semesters. (*Id.*). Defendant tracks students' attendance through their student identification cards, requiring ushers to physically scan each identification card at the end of each concert. (*Id.*). As such, students must be physically present with their identification cards to fulfill the concert attendance requirement. (*See id.*).

To attract students, Defendant makes several representations about its classes and the educational opportunities it offers. (*See* Am. Compl. ¶¶ 59-60). As a musical conservatory, many of Defendant's classes "require" "hands-on" instruction in Defendant's facilities and "in-person" performance. (*Id.* at ¶ 60). For example, Defendant's "Jury" class requires students to complete a "final *in-person performance/examination* ... in front of a panel of jurors, consisting of faculty at MSM." (*Id.* at ¶ 59 (emphasis added)).[4] Classes in studio techniques expect students to utilize "independent lab time" — in Defendant's lab — "for hands-on practice in MIDI [Musical Instrument Digital Interface] composition and recording techniques." (*Id.* at ¶ 60). Similarly, instrumental lessons provide "hands-on learning in [Defendant's] vocal and instrumental studios on a weekly basis." (*Id.*). Defendant offers classes that require "small studio performance[s] at the end of the semester" and "live hearings of student works,"

---

[4]     The Jury class appears to be a graduation requirement for all Bachelor of Music students (*see* Am. Compl. ¶ 59 (using the notation "BM Graduation" in the course description)), but the Court cannot confidently draw this inference on the record currently before it.

4

as well as full-length recitals.  (*Id.* at ¶¶ 59-60).  Still other classes expect "visits from guest artists who [will] present … music in live performance" for students.  (*Id.* at ¶ 60).

Further, Defendant entices students by advertising "an ongoing roster of luminaries invited to lead MSM's high-profile master class series" and by offering "singular performance opportunities at venerable venues such as Jazz at Lincoln Center[.]"  (Am. Compl. ¶ 21).  Defendant describes itself as a "first-rate performing arts center" that "provides … more than 700 live performances a year," hosted in one of "MSM's nine performance venues" or at "off-site partner venues."  (*Id.*).

Like many universities, Defendant attracts students by advertising its location and community.  Defendant markets itself as a "vibrant place to study and live," offering students access to "social activities, study groups, recreation, clubs, and student organizations."  (Am. Compl. ¶ 21).  Moreover, Defendant highlights its Morningside Heights location as a place that allows students to "enjoy the best of two worlds," a "college feel" in a "dynamic, multi-faceted urban setting."  (*Id.*).  Indeed, Defendant entices students to travel from all over the world — as did Plaintiff — by promising to "take[] full advantage of New York's incomparable creative energy" and "abundant learning and performance opportunities."  (*Id.*).

### 2.    The Spring 2020 Semester

In the Spring of 2020, Plaintiff was in her final semester of study at MSM and on the brink of graduation.  (Am. Compl. ¶ 18).  On March 13, 2020, with

the COVID-19 pandemic escalating, Defendant announced that all classes would be conducted online starting March 23, 2020.  (Answer Ex. B; *see also* Am. Compl. ¶ 40).  Defendant also extended students' spring break vacation by an additional week.  (Am. Compl. ¶ 41).  Plaintiff alleges that Defendant closed its campus and limited access to many of its facilities.  (*Id.* at ¶¶ 23, 37, 40, 44).  For the remainder of the semester, Defendant continued with online learning and limited access to school facilities.  (*See id.* at ¶¶ 36-37, 44).  For example, Defendant "repurposed" its concert attendance requirement, allowing students to satisfy the requirement by "log[ging] in and view[ing] at least one performance" in Defendant's digital performance forum, and it held several student performances online.  (Answer Ex. D, H).[5]

Plaintiff continued her education remotely throughout the Spring 2020 semester (*see* Answer Ex. I), although she alleges that her classes "required hands-on, in-person attendance" (Am. Compl. ¶ 59).  Specifically, Plaintiff continued her classes online and received private voice lessons via video conference; however, Plaintiff asserts that "connection issues and technical difficulties" made her lessons "impossible."  (*Id.* at ¶ 59 n.1).  Nevertheless, Plaintiff received letter grades and credit towards her degree, and graduated from MSM on May 15, 2020.  (*See* Answer Ex. I).  In May, Defendant announced that it would not hold its graduation ceremonies as planned.  (Am.

---

[5]     Nothing in the pleadings suggests that MSM students were given an option to defer completion of their degree programs' concert attendance and other live performance requirements until after the pandemic had subsided.

Compl. ¶ 43).  Instead, Defendant hosted a virtual "toast" to celebrate its

graduates.  (*Id.*; *see also* Answer Ex. D).  Defendant did not refund Plaintiff any

portion of the graduation fee she paid.  (Am. Compl. ¶ 54).

As a result of the changes implemented by Defendant in response to the

COVID-19 pandemic, Plaintiff alleges that she was denied the benefits

Defendant promised her.  (Am. Compl. ¶ 37).  Specifically, Plaintiff expected to

receive "face to face interaction with professors, mentors, coaches[,] and peers,"

"access to facilities such as music rooms, study rooms, libraries, practice

rooms, concert halls, and recording studio rooms," and "in-person/hands-on

classes, auditions, and rehearsals."  (*Id.* at ¶ 36).  Defendant has not offered

Plaintiff nor other students refunds for any portion of the tuition or fees

assessed for the Spring 2020 semester.  (*Id.* at ¶¶ 46, 54).[6]  As such, Plaintiff

brings the instant action on behalf of herself and all other MSM students

enrolled during the Spring 2020 semester to recover a portion of the tuition

and fees paid to Defendant.

## B.   Procedural History

On June 11, 2020, Plaintiff initiated this litigation (*see generally* Dkt.

#1), and Defendant answered Plaintiff's initial complaint on October 6, 2020

(Dkt. #15).  On October 9, 2020, Defendant filed a pre-motion letter seeking to

---

[6]     Defendant alleges that it had refunded Plaintiff the unused balance of her commuter
meal plan.  (Answer ¶ 51; Def. Br. 20 n.12).  Plaintiff, however, disputes this, stating
she has not received nor cashed any refund from Defendant.  (Pl. Opp. 8).  For the
purposes of the instant motion, the Court "draw[s] all reasonable inferences in
[Plaintiff's] favor," and "assume[s] [Plaintiff's] well-pleaded factual allegations to be
true[.]"  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

pursue a motion for judgment on the pleadings (Dkt. #19), to which letter Plaintiff filed an opposition on October 13, 2020 (Dkt. #20).  That same day, the parties attended an initial pretrial conference at which they discussed with the Court Defendant's anticipated motion for judgment on the pleadings.  (*See* Minute Entry for October 13, 2020).  At the conference, the Court granted Plaintiff leave to file an amended complaint and directed Defendant to submit a letter regarding its intent to answer the amended complaint or to pursue motion practice on or before November 25, 2020.  (*Id.*).  Thereafter, on November 13, 2020, Plaintiff filed the Amended Complaint (Dkt. #21); Defendant filed another pre-motion letter seeking leave to file a motion to dismiss on November 25, 2020 (Dkt. #22); and Plaintiff filed a letter in opposition on November 30, 2020 (Dkt. #23).  By endorsement dated December 1, 2020, the Court adopted the parties' proposed briefing schedule.  (Dkt. #24).

On December 22, 2020, Defendant answered the Amended Complaint and filed its motion for judgment on the pleadings and supporting papers (Dkt. #26-27); Plaintiff filed her opposition papers on January 22, 2021 (Dkt. #30-31); and Defendant filed its reply on February 5, 2021 (Dkt. #32).  On February 23, 2021, Plaintiff filed a supplemental letter to respond to arguments regarding a recently-decided case raised by Defendant for the first time in its reply brief.  (Dkt. #33).  Since then, the parties have each submitted notices of supplemental authority.  (*See* Dkt. #34-35).

## DISCUSSION

### A.   Applicable Law

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Courts apply the same procedure to evaluate motions for judgment on the pleadings under Rule 12(c) as for motions to dismiss under Rule 12(b)(6).  *Altman* v. *J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 193 (2d Cir. 2015).  This procedure requires courts to "draw all reasonable inferences in [the non-movant's] favor, 'assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'"  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)).  The non-movant is entitled to relief if he or she alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleadings of specifics, it does require enough facts to nudge [the non-movant's] claims across the line from conceivable to plausible." (internal quotation marks and citation omitted)).

"On a [Rule] 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case."  *L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation

9

marks and citation omitted).  Moreover, a pleading is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."  *Id.* (quoting *Sira* v. *Morton*, 380 F.3d 57, 67 (2d Cir. 2004)); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").[7]

## B.   Analysis

### 1.   Plaintiff Adequately Pleads a Breach of Implied Contract Claim

The parties do not dispute, at least for purposes of the instant motion, that this Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. 109-2, 119 Stat. 4-14 (2005).  Additionally, both parties analyze Plaintiff's claims under New York law.  (*Compare, e.g.*, Def. Br. 6-7, 10-11, *with* Pl. Opp. 9-12).  The parties agree that there is no express

---

[7]     In the instant action, Defendant attaches various exhibits to its Answer.  These exhibits include an Executive Order from the Governor of New York (Answer Ex. A); email communications from Defendant to its students (*id.*, Ex. B-F, H); the FRA (*id.*, Ex. G); and Plaintiff's transcript and payments records (*id.*, Ex. I-K).  In her opposition, Plaintiff argues that these exhibits: (i) are inadmissible hearsay, and (ii) improperly provide incomplete factual context prior to discovery and summary judgment.  (Pl. Opp. 5).  As it happens, however, many of the documents attached to Defendant's answer can be fairly said to be incorporated by reference in the Amended Complaint.  (*Compare, e.g.*, Am. Compl. ¶¶ 10, 78, 116 (citing, *inter alia*, Defendant's "bulletins," "circulars," and "website" as bases for the existence of an implied contract), *with* Answer Ex. B-F, H (email communications from Defendant to its students)).  As such, the Court will consider the exhibits annexed to Defendant's Answer in deciding the instant motion to the extent they can fairly be said to be incorporated by reference in the complaint.  *Accord Goldberg* v. *Pace Univ.*, — F. Supp. 3d —, No. 20 Civ. 3665 (PAE), 2021 WL 1565352, at *1 n.1, *3 (S.D.N.Y. Apr. 21, 2021), *appeal filed*, No. 21-1377 (2d Cir. May 28, 2021); *In re Columbia Tuition Refund Action* ("*Columbia Tuition Refund*"), — F. Supp. 3d —, Nos. 20 Civ. 3208 (JMF) and 20 Civ. 3210 (JMF), 2021 WL 790638, at *8 n.9 (S.D.N.Y. Feb. 26, 2021).  Additionally, parties may not properly assert evidentiary objections on a motion for judgment on the pleadings.  *See L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

contract that entitles Plaintiff to in-person educational experiences.  (*See* Am. Compl. ¶ 79; Def. Br. 6).  Rather, Plaintiff alleges that an implied contract exists between Defendant and its students, and that Defendant breached this contract by denying Plaintiff: (i) specific in-person educational experiences, (ii) certain services, and (iii) access to particular facilities.  (Am. Compl. ¶¶ 77-89).

"Under New York law, an implied contract is formed when a university accepts a student for enrollment[.]"  *Papelino* v. *Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011).  "The terms of the implied contract are 'contained in the university's bulletins, circulars[,] and regulations made available to the student.'"  *Id.* (quoting *Vought* v. *Teachers Coll., Columbia Univ.*, 511 N.Y.S.2d 880, 881 (2d Dep't 1987)).  "The interpretation of a university's catalogue, like the interpretation of any contract, is a matter of law for the Court."  *Deen* v. *New Sch. Univ.*, No. 05 Civ. 7174 (KMW), 2007 WL 1032295, at *2 (S.D.N.Y. Mar. 27, 2007).

To be sure, "[n]ot every dispute between a student and a university is amenable to a breach of contract claim."  *Gally* v. *Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998).  To successfully plead a breach of contract claim, plaintiff must allege: "[i] the existence of an agreement; [ii] adequate performance of the contract by the plaintiff; [iii] breach of contract by the defendant; and [iv] damages."  *Eternity Glob. Master Fund Ltd.* v. *Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quotation omitted).  Within the student-university relationship, "'a student must identify specific language

in the school's bulletins, circulars, catalogues and handbooks which establishes the particular contractual right or obligation alleged by the student.'" *In re Columbia Tuition Refund Action* ("*Columbia Tuition Refund*"), — F. Supp. 3d —, Nos. 20 Civ. 3208 (JMF) and 20 Civ. 3210 (JMF), 2021 WL 790638, at *2 (S.D.N.Y. Feb. 26, 2021) (quoting *Keefe* v. *N.Y. Law Sch.*, 906 N.Y.S.2d 773 (Sup. Ct. N.Y. Cnty. 2009) (unpublished table opinion), *aff'd*, 897 N.Y.S.2d 94 (1st Dep't 2010)). "'General policy statements' and 'broad and unspecified procedures and guidelines' will not suffice." *Nungesser* v. *Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016) (quoting *Ward* v. *N.Y. Univ.*, No. 99 Civ. 8733 (RCC), 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000)).

As an initial matter, Defendant contends that tuition constitutes "payment for instruction" (Def. Br. 11), and entitles Plaintiff to nothing more than "instruction in her chosen courses by MSM faculty and … credit toward a MSM degree" (*id.* at 1). But Defendant's own statements belie this position. In its course catalogue, Defendant states that "tuition payment provides access to Manhattan School of Music facilities[.]" (Am. Compl. ¶ 20). Conversely, in the FRA, Defendant threatens to "place a business office hold" if a student fails to pay tuition. (Answer Ex. G). Such a hold "prevent[s] [students] from attending private studio lessons, classes, auditions, rehearsals[,] and participating in other [s]chool activities … or using [Defendant's] facilities (including practice rooms)." (*Id.*). In other words, Defendant cannot here suggest that Plaintiff paid tuition in exchange only for registration or for course credit towards graduation. That is because, to the contrary, Defendant has previously

indicated that Plaintiff, and other MSM students, paid tuition to attend classes, receive private lessons, and access the school's facilities — all of the services MSM denies to students who fail to pay tuition. (*See id.*; Am. Compl. ¶ 55). Indeed, "[p]aying tuition inherently changes the applicant's status to student," and "[t]hat status allows a student to access a number of resources she would be denied if she had not enrolled." *Ford* v. *Rensselaer Polytechnic Inst.*, 507 F. Supp. 3d 406, 416 (N.D.N.Y. 2020). "What a student expects to receive in exchange for tuition money covers much more territory than simply the right to take classes." *Id.* Plaintiff alleges that she was denied more than just the ability to earn credit towards her degree and, in its own words, MSM agrees that tuition entitled Plaintiff to more — at a minimum, it also included access to Defendant's facilities. (Am. Compl. ¶ 55).

Further undermining Defendant's argument that tuition is simply payment for instruction is the fact that MSM's promotional materials contain several statements regarding access to physical facilities on its campus that plausibly allege an implied contractual right to specific in-person instruction, certain services, and access to particular facilities. For example, Defendant promises students an entire floor of "24-hour practice rooms"; yet Plaintiff alleges that students were denied access to these rooms. (Am. Compl. ¶¶ 27-28). Defendant further promises access to a "state-of-the-art digital multi-track facility" so students may graduate "with a portfolio of professional audio and video recordings" — another promise Plaintiff alleges Defendant did not keep. (*Id.* at ¶¶ 33-34). Plaintiff alleges that Defendant closed its performance

13

spaces during the Spring 2020 semester (*id.* at ¶ 32), yet Defendant presented itself as a "first-rate performing arts center," hosting "more than 700 *live* performances a year" in its "nine performance venues and [at] off-site partner venues" (*id.* at ¶ 21 (emphasis added)), fairly suggesting that such performances would in fact take place *live* and *inside* these performance venues, not remotely by videoconference.  In sum, Plaintiff alleges she "accepted MSM's offer of admission to earn a music degree that included the benefit of … access to facilities such as … practice rooms, concert halls, and recording studio rooms."  (*Id.* at ¶ 36).  As a result of Defendant's closure, Plaintiff alleges she was denied access to these facilities (*id.* at ¶ 37) — the very access her tuition payments provided her (*id.* at ¶¶ 20, 55).

Courts have allowed similar claims to survive when predicated on specific promises to access certain facilities.  For example, in *Bergeron* v. *Rochester Institute of Technology*, students alleged that their university failed to provide them with in-person instruction and access to campus activities as promised when the university switched to remote learning due to COVID-19. No. 20 Civ. 6283 (CJS), 2020 WL 7486682, at *1 (W.D.N.Y. Dec. 18, 2020). There, students based their breach of contract claim on, *inter alia*, the university's promise of access to the "finest laboratories, technology[,] and computing facilities available on any campus."  *Id.* at *7.  The *Bergeron* court found this statement to be sufficiently specific to survive a motion to dismiss. *Id.* at *7-8.  Plaintiff's allegations here point to promises of in-person services, experiences, and access to facilities that are even more specific than those

advanced in *Bergeron*.[8]  *See also Ansari* v. *N.Y. Univ.*, No. 96 Civ. 5280 (MBM), 1997 WL 257473, at *1, *4 (S.D.N.Y. May 16, 1997) (finding university's advertisements of "the most sophisticated, state-of-the-art clinical facilities" sufficiently specific to support student's breach of contract claim).

Plaintiff has also identified sufficiently specific statements regarding Defendant's classes and method of instruction to plausibly allege a promise for some in-person instruction and specific educational experiences.  Here again, Defendant's status as a musical conservatory distinguishes Plaintiff's claims from those brought by many other students arising out of the COVID-19 pandemic.  In fact, Plaintiff alleges that "[m]any ... courses, if not all courses" at MSM "require in-person/hands-on instruction" because Defendant "is a musical conservatory." (Am. Compl. ¶ 60).  For example, Plaintiff was enrolled in a "Private Voice" class, which "required hands-on, in-person attendance" (*id.* at ¶ 59) and became "impossible" to conduct once classes went online (*id.* at ¶ 59 n.1).  Plaintiff was also enrolled in a "Jury" class, which required her to complete a "final *in-person* performance/examination" "in front of a panel of jurors, consisting of faculty at MSM." (*Id.* at ¶ 59 (emphasis added)).  A multitude of other classes require either "*live* hearings of student works," "studio performance[s] at the end of the semester," or full-length recitals.  (*Id.*

---

[8]     Defendant's attempts to distinguish *Bergeron* are unavailing.  *First*, Defendant claims that the *Bergeron* court erred by failing to consider the parties' financial responsibility agreement.  (Def. Br. 11 n.7).  Even if true, as discussed *infra*, this Court *has* considered the parties' FRA and does not believe its terms demand dismissal at this stage.  *Second*, Defendant argues that the *Bergeron* court did not consider the educational malpractice doctrine.  (*Id.*).  As discussed below, the education malpractice doctrine does not bar Plaintiff's claims here.

at ¶¶ 59-60 (emphasis added)).  Similarly, the course catalogue touts that students will gain "hands-on experience" by taking advantage of Defendant's recording studio in many classes.  (*See id.*).  Plaintiff alleges these classes could not be conducted as advertised or as required when Defendant moved its classes online, thus denying her the "hands on learning and musical instruction" that Defendant advertised and promised.  (*See id.* at ¶¶ 36-37, 40).

In addition to student performance, Defendant's classes expect "visits from guest artists who [will] present music in *live* performance."  (Am. Compl. ¶ 60 (emphasis added)).  Defendant promises to invite "an ongoing roster of luminaries … to lead MSM's high-profile master class series."  (*Id.* at ¶ 21).  Defendant also offers its students "singular performance opportunities at venerable venues such as Jazz at Lincoln Center[.]"  (*Id.*).  These representations suggest live, in-person performances and classes with prominent musicians and vocalists; Plaintiff alleges that she therefore enrolled at MSM expecting "in-person/hands-on classes" and "participation in public performances," which experiences Defendant denied her in her final semester at MSM.  (*Id.* at ¶¶ 36-37).

Outside of classes, Defendant demands students attend — in person — a certain number of concerts every semester as a graduation requirement, a "vital" piece of their "total educational experience."  (*See* Am. Compl. ¶ 61).  As noted above, to satisfy the concert attendance requirement, students must ensure that concert ushers scan their student identification cards to record their physical presence in the performance hall.  (*Id.*).  In the spring, Defendant

16

"repurposed" this requirement, allowing students to satisfy the requirement by viewing one concert online.  (Answer Ex. H).  As such, Plaintiff alleges she was denied a "vital" in-person educational experience that Defendant advertised and promised.  (*See* Am. Compl. ¶¶ 36-37, 61).  Taken together, the Court is satisfied that for the purposes of the instant motion, Plaintiff has identified statements in Defendant's course catalogue and promotional materials that plausibly allege an implied contractual right to specific in-person instructional experiences.

For many of the same reasons, the Court declines to dismiss Plaintiff's claim for the fees Defendant assessed Plaintiff during the Spring 2020 semester.  At this stage, the record is not clear as to what services or facilities these fees entitled Plaintiff.  As an example, Plaintiff seeks a refund of her graduation fee, noting that there was no in-person graduation ceremony (Am. Compl. ¶ 43), but the record does not demonstrate to what that fee entitled Plaintiff.  And there is an open question as to whether Defendant offered Plaintiff a refund of her remaining meal plan balance, but as explained above, these questions are not appropriately resolved at this stage.  For the purposes of the instant motion, the Court "draw[s] all reasonable inferences in [Plaintiff's] favor," and "assume[s] [Plaintiff's] well-pleaded factual allegations to be true[.]" *Faber*, 648 F.3d at 104.[9]  Whether or not this claim survives a motion for summary judgment is a question for discovery.

---

[9]    Defendant also argues that "the fees referenced by Plaintiff are flat per-semester fees that apply regardless of how much or how little a student uses a particular service or receives a particular benefit."  (Def. Br. 18).  But Plaintiff is not seeking a refund

Defendant's remaining arguments for dismissing Plaintiff's breach of implied contract claim are ineffectual.  *First*, Defendant asks this Court to follow Judge Wood's opinion in *Hassan* v. *Fordham University*, claiming the court dismissed a breach of contract claim predicated on "nearly identical" allegations to the instant action.  (Def. Reply 2).  But Defendant glosses over significant factual differences between the two actions.  Importantly, Plaintiff's claims in this action are supported by stronger textual backing.  For example, Plaintiff alleges that: (i) MSM promised that tuition payments entitled her to "access ... Manhattan School of Music facilities" (Am. Compl. ¶ 20); (ii) MSM's course catalogue demonstrates that classes at MSM require "final in-person performance[s]/examination[s]," "*live* hearings of student works," and "studio performance[s]" (*id.* at ¶¶ 59-60); (iii) classes at MSM require "hands-on," "in-person" instruction because of MSM's unique position as a "musical conservatory" (*id.* at ¶ 60); (iv) MSM promised to invite "luminaries" to lead its master class series (*id.* at ¶ 21); (v) MSM required students to attend concerts in-person in order to graduate (*see id.* at ¶ 61); (vi) MSM promised access to a state-of-the-art recording studio and advertised that students would therefore graduate with "a portfolio of professional audio and video recordings" (*id.* at ¶¶ 33, 45); (vii) MSM promised 24-hour access to a floor of practice rooms and access to its nine performance spaces (*id.* at ¶¶ 21, 27); and (viii) MSM

---

because she *chose* not to use a particular service or receive a particular benefit. Rather, Plaintiff seeks a refund because MSM's closure prevented her from doing so.

promised to provide students with "singular performance opportunities at venerable venues" in New York City (*id.* at ¶ 21).  And Defendant includes evidence that failure to pay tuition does not just preclude Plaintiff from receiving course credit, but also would "prevent[] [Plaintiff] from attending private studio lessons, classes, auditions, rehearsals and participating in other [s]chool activities … or using [Defendant's] facilities (including practice rooms)." (Answer Ex. G).  By contrast, the plaintiff in *Hassan* predicated his claim on, *inter alia*, the defendant's general attendance policies and advertisements of the "on-campus experience." — F. Supp. 3d —, No. 20 Civ. 3265 (KMW), 2021 WL 293255, at *5 (S.D.N.Y. Jan. 28, 2021), *amended by* 2021 WL 293255 (S.D.N.Y. Apr. 6, 2021).[10]

More importantly, Defendant misses the crux of this matter:  Defendant is a musical conservatory, "preparing [Defendant's] students to be accomplished and passionate performers."  (Am Compl. ¶ 21).  Indeed, many, if not all, of Defendant's courses "require in-person/hands on instruction" *because of* the school's unique status as a musical conservatory.  (*Id.* at ¶ 60). By contrast, the *Hassan* court does not address a claim brought by students enrolled in a specialized degree program that would have a unique need for

---

[10]    Relying on *Hassan*, Defendant also believes dismissal is warranted because Plaintiff did not allege that MSM acted arbitrarily or in bad faith.  (Def. Reply 5).  Since then — and after Defendant filed its reply — Judge Wood amended her analysis to state that "with respect to pleading the breach element of a contract claim, [p]laintiff is not required to plead that [defendant] acted arbitrarily or in bad faith."  *Hassan* v. *Fordham Univ.*, No. 20 Civ. 3265 (KMW), 2021 WL 1263136 at *2 (S.D.N.Y. Apr. 6, 2021), *amending* 2021 WL 293255 (S.D.N.Y. Jan. 28, 2021).  Accordingly, the Court rejects Defendant's argument that Plaintiff must plead bad faith to adequately allege a claim for breach of implied contract. *Accord Columbia Tuition Refund*, 2021 WL 790638, at *7.

hands-on instruction and in-person learning.  *See generally Hassan*, 2021 WL

293255, at *1.  As such, the nature of the agreement alleged to exist between

the parties — and the educational experience to be provided — are entirely

different.[11]  A sister court acknowledged as much when declining to dismiss a

student's claim for fees against the Pratt Institute, a university that "focuses on

architecture, design, and other artistic programs."  *Hewitt* v. *Pratt Inst.*, No. 20

Civ. 2007 (ERK) (SJB), 2021 WL 2779286, at * 1 (E.D.N.Y. July 2, 2021).  In

declining to dismiss the fees claim, the court considered the artistic nature of

the classes.  *See id.* at *3 (noting students paid these fees for in-person

"technical arts programs" like "participation in ceramics, sculpture, and

---

[11]    The same is true for many similar actions before sister courts in this District.  *See, e.g.*, *Beck* v. *Manhattan Coll.*, No. 20 Civ. 3229 (LLS), 2021 WL 1840864, at *1 (S.D.N.Y. May 7, 2021); *Columbia Tuition Refund*, 2021 WL 790638, at *1.  The Court understands that Plaintiff's action is one of many across this District, and indeed the country, in which students are seeking refunds from their universities as a result of their transitions to online learning during the pandemic.  But of these cases, few have addressed specialized degree programs such as those offered by MSM.  The Court is aware of *Goldberg* v. *Pace University*, which bears certain factual similarities to claims advanced in this action.  2021 WL 1565352, at *1-3.  In *Goldberg*, the student was enrolled in a Master of Fine Arts program.  *Id.* at *1.  Specifically, the student alleged that his university breached an implied contract by, *inter alia*, failing to hold (i) in-person classes, (ii) a production of the student's play at a downtown Manhattan theater, and (iii) its preparatory class that required in-person meetings.  *Id.* at *1-2.  The court rejected plaintiff's claim that he was promised in-person instruction generally, but extracted the allegations regarding the production and preparatory class and dismissed them without prejudice as unripe because the university had *postponed* these experiences, as opposed to cancelling them.  By contrast, for example, Defendant held Plaintiff's "final in-person performance/examination" for her jury class online and converted the "integral" concert requirement to an online experience.  (*See* Answer Ex. C, I).  As such, Plaintiff's claims are ripe, and for the reasons discussed above, the Court finds them sufficiently specific to survive the instant motion.

printmaking courses"). Similarly, the education Defendant offers here is in and of itself an artistic degree program, requiring specialized, technical training.[12]

*Second*, Defendant contends that the terms of the FRA demand dismissal. (Def. Br. 17). In support of that argument, Defendant highlights Plaintiff's statement in the FRA that "I understand that when I register for any class at or receive any service from Manhattan School of Music I accept full responsibility to pay all tuition, fees[,] and other associated costs assessed as a result of my registration and/or receipt of services by the published or assigned due date." (Answer Ex. G; *see* Def. Br. 17). For legal support, Defendant relies on *Chong* v. *Northeastern University*, where the court dismissed a student's breach of contract claim — and not a breach of *implied* contract claim. 494 F. Supp. 3d 24 (D. Mass. 2020). (*See also* Def. Br. 17). In *Chong*, plaintiffs alleged the defendant-university breached the *express* terms of the parties' financial responsibility agreement. *Id.* at 28. By contrast, the crux of Plaintiff's claim in the instant action is that MSM breached an *implied* contract. As such, *Chong* is "distinguishable and of little weight." *See Ford*, 507 F. Supp. 3d at 416 (distinguishing *Chong* from breach of implied contract action).[13]

---

[12]   In keeping with its hands-on education, Defendant assesses fees that are similarly artistic, such as an instrument maintenance fee and an application/audition fee. (*See* Am. Compl. ¶ 52).

[13]   Defendant further argues that the educational malpractice doctrine bars Plaintiff's claims. The Court disagrees. It is well-settled that claims of educational malpractice are not cognizable under New York law. *See Andre* v. *Pace Univ.*, 655 N.Y.S.2d 777, 779 (2d Dep't 1996). A claim of educational malpractice requires courts "to make judgments as to the validity of broad educational policies — a course [New York courts] have unalteringly eschewed in the past." *Id.* As such, the Court must dismiss claims "[w]here the essence of the complaint is that the school breached its agreement by

In sum, the Court finds Defendant's statements to be sufficiently specific to give Plaintiff the expectation that her payment of tuition and fees entitled her to more than just course credit towards graduation, and instead encompassed physical access to MSM facilities and certain in-person, hands-on educational experiences.  However, and to be clear, the Court is not suggesting that Defendant acted improperly in closing its facilities during the COVID-19 pandemic, as it clearly acted to protect the health and safety of staff, students, and faculty.

### 2.    The Court Will Not Dismiss Plaintiff's Unjust Enrichment Claim as Duplicative

In the alternative, Plaintiff alleges Defendant's conduct constitutes unjust enrichment.  (Am. Compl. ¶¶ 92-99).  Defendant argues this claim should fail because it is duplicative of Plaintiff's breach of implied contract claim.  (Def. Br. 20-21).  The New York Court of Appeals has explained that "[t]he existence of a valid and enforceable written contract governing a

---

failing to provide an effective education."  *Gally* v. *Columbia Univ.*, 22 F. Supp. 2d 199, 206-07 (S.D.N.Y. 1998).

Here, Plaintiff is not asking this Court to "review the soundness of the method of teaching that has been adopted by [Defendant]."  *Paladino* v. *Adelphi Univ.*, 454 N.Y.S.2d 868, 872 (2d Dep't 1982).  Rather, as discussed above, Plaintiff has alleged that she was entitled to specific services that Defendant failed to deliver.  As such, the Court may appropriately adjudicate Plaintiff's claim without "involv[ing] itself in the subjective professional judgments of trained educators."  *See Gally*, 22 F. Supp. 2d at 207.

Furthermore, in the wave of litigation arising out of pandemic-related school closures, many defendant-universities have asked courts to dismiss students' claims as violations of the educational malpractice doctrine.  To date, no court in this District has accepted this argument and the Court agrees with its sister courts in rejecting Defendant's argument.  *Accord Goldberg*, 2021 WL 1565352, at *5-6; *Zagoria* v. *N.Y. Univ.*, No. 20 Civ. 3610 (GBD) (SLC), 2021 WL 1026511, at *2-3 (S.D.N.Y. Mar. 17, 2021); *Columbia Tuition Refund*, 2021 WL 790638, at *6; *Hassan*, 2021 WL 293255, at *2-4.

22

particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter[.]" *Clark-Fitzpatrick, Inc.* v. *Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987) (citing *Blanchard* v. *Blanchard*, 201 N.Y. 134, 138 (1911)). Yet where there is a "bona fide dispute over the existence of the contract," a claim for unjust enrichment must not be dismissed as duplicative of a breach of contract claim. *Shanghai Weiyi Int'l Trade Co.* v. *Focus 2000 Corp.*, No. 15 Civ. 3533 (CM), 2015 WL 6125526, at *6 (S.D.N.Y. Oct. 16, 2015) (citations omitted); *see also Chigirinskiy* v. *Panchenkova*, No. 14 Civ. 4410 (JPO), 2015 WL 1454646, at *18 (S.D.N.Y. Mar. 31, 2015) (holding that "unjust enrichment may be pleaded in the alternative to breach of contract").

In the instant matter, the parties dispute the existence of any agreement entitling Plaintiff to in-person educational experiences. (*See* Am. Compl. ¶ 80; Answer ¶ 80; *see also* Def. Br. 2 ("Plaintiff asks that this Court create a contract ... where no such contract exists[.]")). Because of this dispute, and at this stage in the litigation, Plaintiff's claim for unjust enrichment is not yet duplicative of her breach of implied contract claim.[14]

---

[14]   Defendant also argues that Plaintiff "has alleged no facts showing that 'equity and good conscience' require[] a refund of tuition and fees," and thus has not adequately pleaded a claim for unjust enrichment. (Def. Br. 21). To state a claim for unjust enrichment, New York law requires a plaintiff to "establish [i] that the defendant benefitted; [ii] at the plaintiff's expense; and [iii] that equity and good conscience require restitution." *Kaye* v. *Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotation marks and citation omitted).

Here, Plaintiff alleges that she and other MSM students paid tuition to Defendant "in expectation of receiving one product" — namely in-person instruction and access to facilities — "but were provided instead with a different product." (Am. Compl. ¶ 97). Plaintiff further alleges that Defendant "retained this benefit, even though [Defendant] failed to provide the services for which the [t]uition and [f]ees were collected" (*id.* at

### 3.   The Court Dismisses Plaintiff's Remaining Claims

#### a.   Conversion

Under New York law, to plead a claim of conversion, a plaintiff must establish that "[i] the property subject to conversion is a specific identifiable thing; [ii] plaintiff had ownership, possession[,] or control over the property before its conversion; and [iii] defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Ellington Credit Fund, Ltd.* v. *Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 204 (S.D.N.Y. 2011) (quoting *Moses* v. *Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004)).  "Money may be the subject of a conversion action only if it is 'specifically identifiable and segregated' and there exists 'an obligation to return or otherwise treat in a particular manner the specific fund in question.'" *Columbia Refund Action*, 2021 WL 790638, at *9 (quoting *Mfrs. Hanover Tr. Co.* v. *Chem. Bank*, 559 N.Y.S.2d 704, 712 (1st Dep't 1990)).  "For a claim of conversion to survive a motion to dismiss, it is not enough merely to incorporate the factual allegations relating to breach of contract." *Frontline Processing Corp.* v. *Merrick Bank Corp.*, No. 13 Civ. 3956 (RPP), 2014 WL 837050, at *6 (S.D.N.Y. Mar. 3, 2014).  Rather, a conversion claim may only succeed if a plaintiff alleges wrongs and damages distinct from those predicated on a breach of contract. *See Command Cinema Corp.* v. *VCA*

---

¶ 98), and as such, equity and good conscience require Defendant to issue a partial refund (*id.* at ¶ 99).  At this procedural posture, the Court accepts these well-pleaded allegations as true.  *See Faber*, 648 F.3d at 104.  Therefore, the Court declines to dismiss Plaintiff's unjust enrichment claim as inadequately pleaded.

*Labs, Inc.*, 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006); *Priolo Commc'ns, Inc.* v. *MCI Telecomm. Corp.*, 669 N.Y.S.2d 376, 377 (2d Dep't 1998).

Plaintiff's claim fails on two fronts.   *First*, Plaintiff's claim must be dismissed as duplicative of her breach of implied contract claim.   As Defendant notes (*see* Def. Br. 22), Plaintiff does not allege any wrongful act that is separately actionable.   (*Compare* Am. Compl. ¶¶ 103-08, *with id.* at ¶¶ 81-89). Unsurprisingly, courts addressing conversion claims in the context of COVID-19-related tuition refund cases have uniformly dismissed such claims.   *See, e.g.*, *Beck* v. *Manhattan Coll.*, No. 20 Civ. 3229 (LLS), 2021 WL 1840864, at *5 (S.D.N.Y. May 7, 2021); *Morales* v. *N.Y. Univ.*, No. 20 Civ. 4418 (GBD), 2021 WL 1026165, at *2 (S.D.N.Y. Mar. 17, 2021); *Columbia Tuition Refund*, 2021 WL 790638, at *9; *Hassan*, 2021 WL 293255, at *11-12.   *Second*, Plaintiff does not predicate her claim on a "specifically identifiable and segregated" fund.   *Mfrs. Hanover Tr.*, 559 N.Y.S.2d at 712.   Plaintiff argues that her tuition and fees are sufficiently identifiable because they are "earmarked by MSM in the ordinary course of business."   (Pl. Opp. 19).   But Plaintiff does not point to any authority to support that conclusory allegation.[15]   For each of these reasons, Plaintiff has failed to state a claim for conversion.

---

[15]   Instead, Plaintiff relies on *Thys* v. *Fortis Sec. LLC*, where an employee returned a bonus payment so their employer could recalculate and repay them an adjusted sum.   903 N.Y.S.2d 368, 369 (1st Dep't 2010).   There, the money was "entrusted to [defendants'] custody only for a particular purpose namely, the purpose of recalculating and repaying the bonus due to plaintiff."   *Id.* (internal quotation omitted).   As such, the Court does not find *Thys* applicable to the circumstances here.   *See Hassan*, 2021 WL 293255, at *11 (distinguishing *Thys* and dismissing conversion claim); *Beck*, 2021 WL 1840864, at *5 (same).

### b.    NYGBL § 349

Section 349 of New York's General Business Law renders unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in" the State of New York.  NYGBL § 349(a).  "To state a *prima facie* claim under [Section 349], a plaintiff must allege that the defendant [i] engaged in consumer-oriented conduct; [ii] that the conduct was materially misleading; and [iii] that the plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Weisblum* v. *Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015).  "'Deceptive acts' are … acts 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"  *Boule* v. *Hutton*, 328 F.3d 84, 94 (2d Cir. 2003) (quoting *Maurizio* v. *Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)).

Defendant argues that Plaintiff's NYGBL claim should be dismissed because Plaintiff "does not and cannot claim that any conduct by MSM has been deceptive or misleading."  (Def. Br. 24).  In response, Plaintiff asserts that "the issue of whether MSM's acts were materially misleading cannot be resolved at this stage" and is better left to a jury.  (Pl. Opp. 23).  But "[w]hile the question of whether a reasonable consumer would be deceived … is not typically resolved at the motion to dismiss stage, dismissal is appropriate when the complaint fails to allege facts that state a plausible claim for relief."  *Axon* v. *Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018) (citation omitted), *aff'd sub nom. Axon* v. *Florida's Nat. Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020) (summary order).  That is the case here.  Plaintiff alleges that had she

known "that MSM's claims regarding the provision of the on-campus experience were false or subject to MSM's unilateral change without provision of any refund, Plaintiff would not have paid the price."  (Am. Compl. ¶ 120).  But Defendant did not — and could not — know that its representations were false or that it would need to transition abruptly to online learning.  *See Columbia Tuition Refund*, 2021 WL 790638, at *10 ("Plaintiffs cite, and the Court has found, no case holding that a plaintiff can state a claim under Section 349 … where the defendant neither knew nor could have known that its commercial acts or practices were false."); *Goldberg* v. *Pace Univ.*, — F. Supp. 3d —, No. 20 Civ. 3665 (PAE), 2021 WL 1565352, at *3 (S.D.N.Y. Apr. 21, 2021) ("[Plaintiff] may take issue with [the] decision not to offer him tuition or fee refunds … [b]ut the facts pled do not, at all, make out a deceptive business practice."), *appeal filed*, No. 21-1377 (2d Cir. May 28, 2021).  As such, the Court agrees with Defendant and dismisses Plaintiff's claim brought pursuant to Section 349 of the NYGBL.

## CONCLUSION

To reiterate, the Court does not fault Defendant for taking steps in Spring 2020 to prioritize the health of MSM's students, faculty, and staff over in-person learning experiences.  That said, the pleadings suggest that such steps may have breached an implied contract with MSM's students.  Accordingly, and for the reasons set forth in this Opinion, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.  The Clerk of Court is directed to terminate the motion pending at docket entry 26.  On or before

27

**August 10, 2021**, the parties are ORDERED to submit a joint status letter and

a proposed Civil Case Management Plan.

      SO ORDERED.

Dated:      July 20, 2021
             New York, New York

                                        KATHERINE POLK FAILLA
                                 United States District Judge